UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEL M. COHEN, | Case No. CV 17-7984 JC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER OF REMAND |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

## I.    SUMMARY

On November 1, 2017, plaintiff Rachel M. Cohen filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits.  The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion") (collectively "Motions").  The Court has taken the Motions under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; 11/2/17 Case Management Order ¶ 5.

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On April 19, 2013, plaintiff filed applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"), alleging disability beginning on March 5, 1998, due to fibromyalgia, neck injury, bilateral wrist and hand problems, gastrointestinal problems, GERD, hypertension, IBS, obesity, lower back problems, OCD, PTSD, insomnia, and anxiety. (Administrative Record ("AR") 20, 247, 253, 291). The Administrative Law Judge ("ALJ") examined the medical record and heard testimony from plaintiff (who was represented by counsel), and from vocational and medical experts. (AR 44-87).

On August 10, 2016, the ALJ determined that plaintiff was not disabled at any point from March 5, 1998 (the alleged onset date) until April 19, 2013 (the date plaintiff became disabled). (AR 20-37). More specifically, the ALJ found: (1) "there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment" at any point prior to September 30, 2004 (the "date last insured" for purposes of plaintiff's DIB claim) or prior to April 19, 2013 (the protective filing date for purposes of plaintiff's SSI claim) (AR 23-28); (2) beginning on April 19, 2013, plaintiff suffered from the following severe impairments: obesity, degenerative disc disease of the cervical and lumbar spine, PTSD, and a depressive disorder secondary to a physical issue (AR 28); (3) from April 19, 2013 to July 8, 2014, plaintiff's impairments, considered individually or in combination, did not meet or medically equal a listed impairment, but plaintiff retained the residual functional capacity to perform less than a sedentary range of work, and was incapable of performing any substantial

///

2

gainful activity (AR 28-34); and (4) since July 8, 2014, the severity of plaintiff's impairments medically equaled Listing 1.04A (AR 35-36).

On September 18, 2017, the Appeals Council denied plaintiff's application for review.  (AR 10).

## III.  APPLICABLE LEGAL STANDARDS

### A.  Federal Court Review of Social Security Disability Decisions

A federal court may set aside a denial of benefits only when the Commissioner's "final decision" was "based on legal error or not supported by substantial evidence in the record."  42 U.S.C. § 405(g); Trevizo v. Berryhill, 871 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted).  The standard of review in disability cases is "highly deferential."  Rounds v. Commissioner of Social Security Administration, 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation marks omitted).  Thus, an ALJ's decision must be upheld if the evidence could reasonably support either affirming or reversing the decision.  Trevizo, 871 F.3d at 674-75 (citations omitted).  Even when an ALJ's decision contains error, it must be affirmed if the error was harmless.  Treichler v. Commissioner of Social Security Administration, 775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error harmless if (1) inconsequential to the ultimate nondisability determination; or (2) ALJ's path may reasonably be discerned despite the error) (citation and quotation marks omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Trevizo, 871 F.3d at 674 (defining "substantial evidence" as "more than a mere scintilla, but less than a preponderance") (citation and quotation marks omitted).  When determining whether substantial evidence supports an ALJ's finding, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion[.]"  Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

3

Federal courts review only the reasoning the ALJ provided, and may not affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely." Trevizo, 871 F.3d at 675 (citations omitted). Hence, while an ALJ's decision need not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's reasoning "in a way that allows for meaningful review." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citing Treichler, 775 F.3d at 1099); see generally 42 U.S.C. § 405(b)(1) ("ALJ's unfavorable decision must, among other things, "set[] forth a discussion of the evidence" and state "the reason or reasons upon which it is based"); 20 C.F.R. §§ 404.953(a), 416.1453(a) ("The administrative law judge shall issue a written decision that gives the findings of fact and the reasons for the decision."); Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194, 196-97 (1947) (administrative agency's determination must be set forth with clarity and specificity).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record. Brown-Hunter, 806 F.3d at 492 (citations omitted). When a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate. See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

## B. Administrative Evaluation of Disability Claims

### 1. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). To be considered disabled, a claimant must have an impairment of such severity that she

4

is incapable of performing work the claimant previously performed ("past relevant work") as well as any other "work which exists in the national economy." <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)).

To assess whether a claimant is disabled, an ALJ is required to use the five-step sequential evaluation process set forth in Social Security regulations. <u>See Stout v. Commissioner, Social Security Administration</u>, 454 F.3d 1050, 1052 (9th Cir. 2006) (citations omitted) (describing five-step sequential evaluation process) (citing 20 C.F.R. §§ 404.1520, 416.920). The claimant has the burden of proof at steps one through four – *i.e.*, determination of whether the claimant was engaging in substantial gainful activity (step 1), has a sufficiently severe impairment (step 2), has an impairment or combination of impairments that meets or medically equals one of the conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings") (step 3), and retains the residual functional capacity to perform past relevant work (step 4). <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). The Commissioner has the burden of proof at step five – *i.e.*, establishing that the claimant could perform other work in the national economy. <u>Id.</u>

**IV.    DISCUSSION**

Plaintiff contends that the ALJ erred in finding no medically determinable impairment prior to the date last insured essentially because the ALJ failed properly to consider medical opinion evidence. (Plaintiff's Motion at 4-12). The Court agrees that a remand is warranted.

///
///
///
///
///
///

**A.   Pertinent Law**

**1.   Step Two**

At step two a claimant essentially must present objective medical evidence[1] which establishes that she has a sufficiently severe medically determinable physical or mental impairment that satisfies the duration requirement (*i.e.*, an impairment that has lasted or can be expected to last for a continuous period of twelve months or more).  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 404.1521, 416.909, 416.920(a)(4)(ii), 416.921; see also 42 U.S.C. §§ 423(d), 1382c(a)(3); see also Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987); Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005) (citation omitted).

Step two "is a de minimis screening device [used] to dispose of groundless claims."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing Bowen, 482 U.S. at 153-54), superseded, in part, on unrelated grounds by 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  "An impairment . . . may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'"  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting id.) (emphasis in original); see also 20 C.F.R. §§ 404.1522(a); 416.922(a) (impairment "not severe" only when it does not "significantly limit [a claimant's] physical or mental ability to do basic work activities"); Social Security Ruling ("SSR") 96-4p, 1996 WL 374187, *2 (substantial evidence supports ALJ's determination that a claimant is not disabled at step two only where "there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental

---

[1]"Objective medical evidence" consists of "signs, laboratory findings, or both."  20 C.F.R. §§ 404.1502(f), 416.902(f).  "Signs" are "anatomical, physiological, or psychological abnormalities that can be . . . shown by medically acceptable clinical diagnostic techniques."  20 C.F.R. §§ 404.1502(g), 416.902(g).  "Laboratory findings" are "anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques."  20 C.F.R. §§ 404.1502(c), 416.902(c).

impairment"). Hence, when reviewing an ALJ's findings at step two, the district court essentially "must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." Webb, 433 F.3d at 687 (citing Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.")).

## 2.    Evaluation of Medical Opinion Evidence

In Social Security cases, an ALJ is required to evaluate "every medical opinion" in a claimant's case record. 20 C.F.R. §§ 404.1527(b), (c), 416.927(b), (c). The amount of weight given to a medical opinion generally varies depending on the type of medical professional who provided the opinion, namely "treating physicians," "examining physicians," and "nonexamining physicians." 20 C.F.R. §§ 404.1527(c)(1)-(2) & (e), 404.1502, 404.1513(a); 20 C.F.R. §§ 416.927(c)(1)-(2) & (e), 416.902, 416.913(a); Garrison, 759 F.3d at 1012 (citation and quotation marks omitted). A treating physician's opinion is generally given the most weight, and may be "controlling" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). In turn, an examining, but non-treating physician's opinion is entitled to less weight than a treating physician's, but more weight than a nonexamining physician's opinion. Garrison, 759 F.3d at 1012 (citation omitted).

An ALJ may reject the uncontroverted opinion of either a treating or examining physician by providing "clear and convincing reasons that are supported by substantial evidence" for doing so. Bayliss v. Barnhart, 427 F.3d

1211, 1216 (9th Cir. 2005) (citation omitted).  Where a treating or examining physician's opinion is contradicted by another doctor's opinion, an ALJ may reject such opinion only "by providing specific and legitimate reasons that are supported by substantial evidence." <u>Garrison</u>, 759 F.3d at 1012 (citation and footnote omitted).  An ALJ may reject a nonexamining physician's opinion "by reference to specific evidence in the medical record." <u>Sousa v. Callahan</u>, 143 F.3d 1240, 1244 (9th Cir. 1998) (citations omitted); <u>Beam v. Colvin</u>, 43 F. Supp. 3d 1163, 1167-68 (W.D. Wash. 2014) (as amended) (citing, in part, <u>id.</u>); <u>see also</u> <u>Chavez v. Astrue</u>, 699 F. Supp. 2d 1125, 1135 (C.D. Cal. 2009) (although not bound opinions of nonexamining physician, ALJ's decision may not ignore such opinions and "must explain the weight given to the opinions") (citations and quotation marks omitted).

An ALJ may provide "substantial evidence" for rejecting a medical opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." <u>Garrison</u>, 759 F.3d at 1012 (citing <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998)) (quotation marks omitted).  Nonetheless, an ALJ must provide more than mere "conclusions" or "broad and vague" reasons for rejecting a treating or examining physician's opinion. <u>Embrey v. Bowen</u>, 849 F.2d 418, 421 (9th Cir. 1988); <u>McAllister v. Sullivan</u>, 888 F.2d 599, 602 (9th Cir. 1989) (citation omitted).  "[The ALJ] must set forth his [or her] own interpretations and explain why they, rather than the [physician's], are correct." <u>Embrey</u>, 849 F.2d at 421-22.

**B.    Pertinent Facts**

**1.    Dr. David B. Pechman**

On February 13, 2004, Dr. David B. Pechman, a board certified orthopaedic surgeon, performed an Agreed Medical Examination ("AME") in plaintiff's workers' compensation case.  (AR 552-68).  In the AME report Dr. Pechman noted that he had conducted an extensive physical examination of plaintiff (during which he found multiple positive "tender points of Fibromyalgia") and that

plaintiff had provided a history of her illness (which, in part, suggested that MRI scans had previously been taken of plaintiff's cervical spine which revealed "a 2-3 mm disc bulge at C4-5 and C5-6," and plaintiff had been diagnosed with fibromyalgia in the beginning of 2001). (AR 553-55, 565-67). Based on the foregoing, Dr. Pechman tentatively diagnosed plaintiff with cervical and lumbosacral disc disease (AR 564), "defer[red] any further comments on the [plaintiff's] history of fibromyalgia to a Rheumatology Agreed Medical Evaluator" (AR 563, 566, 568), and found plaintiff required work restrictions including "no forceful or repetitive cervical motions" and no "heavy work" (as such term is used in California workers' compensation cases). (AR 567). Noting that "further work up" was required with respect to plaintiff's spinal impairments, Dr. Pechman also ordered repeat MRI scans of plaintiff's cervical spine ("to rule out the progression of disc bulges") and lumbar spine, stating that he would issue additional findings and opinions as soon as he was able to review the results of the repeat MRI scans as well as plaintiff's "complete medical file" (which had not been made available to him). (AR 568).

In a Supplemental Report dated July 30, 2004 – a date before the September 30, 2004 date last insured – Dr. Pechman noted that he had subsequently been able to review "a large file of [plaintiff's] medical records" (AR 600) which, in pertinent part, showed that (i) on September 29, 1998, an MRI scan of plaintiff's cervical spine showed 2-3 mm disc bulges at both C4-5 and C5-6 (AR 577-78, 601); (ii) on January 27 and February 24, 2000, plaintiff's cervical spine was evaluated under fluroscopy (an x-ray procedure which produces real time video images of internal organs in motion) further to a preoperative diagnosis of "[c]ervical radiculopathy secondary to C4-5 and C5-6 disc herniations" (AR 586-87); and (iii) on July 29, 2003, Dr. David. S. Silver opined in the report of an Agreed Medical Examination that plaintiff had "clear and definitive symptoms of fibromyalgia" (AR 596). Dr. Pechman further stated that the "findings and

opinions" expressed in his February 13, 2004 report would "remain unchanged" considering his review of plaintiff's records. (AR 602).

In a Supplemental Report dated December 13, 2004, Dr. Pechman – who had reviewed "the actual [] films" from repeat MRI scans of plaintiff's cervical and lumbar spine conducted on March 30, 2004 – before the date last insured – noted that such scans revealed the "key finding" of "a 4-5mm central and left paracentral disc protrusion at C4-5," and "a 2mm central and right paracentral disc protrusion associated with mild uncinate spurring on the right side [] at C5-6 . . . [which] result[ed] in mild to moderate foraminal narrowing on the right side[.]" (AR 545). Dr. Pechman opined that the "4-5mm [protrusion] would be considered a . . . moderate to large C4-5 disc herniation[,]" that there was "a significant disc problem at C4-5" in plaintiff's cervical spine which "certainly [raised] a serious concern[,]" and that "at some point [plaintiff was] going to require a cervical discectomy and fusion." (AR 545-46). Given the foregoing, Dr. Pechman again said his prior opinions regarding plaintiff's cervical and lumbar spine impairments and related work restrictions would remain unchanged. (AR 545-49).

## 2. Dr. Sean Leoni

On June 7, 2004, Dr. Sean Leoni, one of plaintiff's treating physicians, performed a physical examination of plaintiff (which, in part, revealed multiple positive fibromyalgia "tender points"), conducted an extensive review of plaintiff's medical records (which included Dr. Silver's July 29, 2003 "impression" that plaintiff "had clear and definitive symptoms of fibromyalgia"),[2] and prepared a "Comprehensive Internal Medicine Medical-Legal Final Report

---

[2]According to Dr. Leoni, Dr,. Silver's "impression" noted the plaintiff had clear and definitive symptoms of fibromyalgia, as defined as 11 or more out of 18 positive tender points, with concomitant fatigue and sleep disturbance, and that plaintiff appeared to have regional pain syndrome that had developed into a global pain syndrome and led to the development of fibromyalgia. (AR 1250).

with Review of Records" in connection with plaintiff's workers' compensation case. (AR 693-708, 1228-60). In such June 2004 report, Dr. Leoni diagnosed plaintiff with fibromyalgia, among multiple other impairments, based on evidence that "[t]he [plaintiff] has tender points and at least a three-month history of widespread muscle pain involving the trunk and all four extremities [which] fulfills the diagnostic criteria for fibromyalgia syndrome." (AR 1254).

### 3.    ALJ's Decision

The ALJ found "no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment" at any point prior to plaintiff's date last insured, and more specifically explained:

> In sum, the [plaintiff] has not established identifiable medical impairments that would last more than 12 months prior to the date last insured. [Plaintiff] submitted de minimis evidence for this period and, other than her uncorroborated assertions, there is no clear evidence she had a medical[ly] determinable impairment that would cause work related limitations for a **twelve-month period**. Rather, the [plaintiff] submitted evidence that she was involved in a workers compensation claim during this period, and the evidence, as outlined above, contained summaries of medical findings and with disability status related to workers compensation claim with some minimal medical records, but nothing to clearly delineate she had an identifiable medical impairment prior to the date last insured.

(AR 27) (emphasis in original).

### C.    Analysis

Here, for at least the reasons discussed below, a remand is warranted because the ALJ materially erred in essentially concluding that the record contained no evidence of a severe, medically determinable impairment from prior to plaintiff's date last insured which met the duration requirement.

///

First, the ALJ erred to the extent she found that plaintiff was not disabled (or that her impairments were not disabling) at step two of the sequential evaluation process based on plaintiff's asserted failure to show that she had one or more medically determinable impairments which lasted for 12 consecutive months entirely *before* the date last insured (AR 27. <u>See</u> 42 U.S.C. § 423(d)(1)(A) (disability, in part, requires medically determinable impairment which "can be *expected* to last for a continuous period of not less than 12 months) (emphasis added); SSR 82-52, 1982 WL 31376, *1 (same); <u>cf.</u> SSR 82-52, 1982 WL 31376, *4 (disability claim should be denied at steps four or five – *i.e.*, "on the basis of ability to engage in past or other work" – rather than "[on] the basis of insufficient duration" – in part, where claimant has a severe impairment(s) that may last for a continuous period of 12 months or more but impairment(s) still "is not expected to preclude [all substantial gainful activity]"; <u>see generally</u>, Barbara Samuels, Duration Requirement in General, Social Security Disability Claims: Practice and Procedure, § 22:265 ("[I]t is not required that the duration requirement be met before expiration of insured status as long as onset occurs on or prior to the date last insured.").

Second, in essentially concluding that plaintiff had provided only "uncorroborated assertions" and "de minimis evidence" of a severe medical impairment from before the date last insured which also met the duration requirement, the ALJ necessarily failed to account for significant, probative evidence in the record from physicians in plaintiff's workers' compensation case. For one example, as discussed more fully above, Dr. Pechman essentially opined that, as early as September 1998 objective medical testing of plaintiff's cervical spine reflected "disc bulges" that necessarily had more than a minimal effect on plaintiff's ability to work, and that by March 2004 (years later, but still before the date last insured) plaintiff's cervical spine bulges had progressed to such an extent that plaintiff needed surgery. (AR 545-46, 577-78, 601). To the extent the ALJ

implicitly rejected Dr. Pechman's opinions, as defendant suggests (Defendant's Motion at 1-2, 4-5), the ALJ's decision lacks sufficiently specific and legitimate reasons supported by substantial evidence for doing so. For instance, the ALJ wrote that "[r]eports from doctors retained exclusively for examining the [plaintiff] in the context of a workers compensation case afford little, if any, weight." (AR 27). Nonetheless, an ALJ may not disregard a medical opinion simply because it was generated for a workers' compensation case, or it used worker's compensation terminology. See Booth v. Barnhart, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002) (citations omitted). Instead, an ALJ must evaluate any objective medical findings in such opinions "just as he or she would [for] any other medical opinion." Id. at 1105-06 (an ALJ entitled to draw inferences which "logically flow[] from" findings in workers' compensation medical opinions) (citations omitted). The ALJ's conclusory assertion that "the standard for disability for workers['] compensation and Social Security are completely different" (AR 27) is also not a valid basis for rejecting opinions provided by Dr. Pechman or any other physician in plaintiff's workers' compensation case. A Social Security decision must reflect that the ALJ actually took into account the pertinent distinctions between the applicable state and federal statutory schemes when evaluating medical opinion evidence provided in a workers' compensation case. See Knorr v. Berryhill, 254 F. Supp. 3d 1196, 1212 (C.D. Cal. 2017) ("While the ALJ's decision need not contain an explicit 'translation,' it should at least indicate that the ALJ recognized the differences between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand, and took those differences into account in evaluating the medical evidence.") (citations omitted).

In addition, the ALJ's broad and general assertion that reports provided by unidentified workers' compensation physicians were entitled to "significantly less weight" because "the carbon copy like nature of the reports casts significant doubt

13

on their objective findings and conclusions" (AR 28) was an insufficient basis for rejecting any specific medical opinion in plaintiff's case.  Cf. Marsh, 792 F.3d at 1172-73 (ALJ decision may not "totally ignore a [specific] treating doctor and his or her notes, without even mentioning them.") (citing Garrison, 759 F.3d at 1012); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (ALJ's "broad and vague" reasons for rejecting medical opinion inadequate because they "[failed] to specify why the ALJ felt the treating physician's opinion was flawed").  Likewise the ALJ's asserted theory that workers' compensation physicians are "well known" for providing "extremely generous" opinions for whomever they represent (AR 27) is specifically inapplicable, at least, with respect to Dr. Pechman, who was chosen as an "agreed medical evaluator" in plaintiff's workers' compensation case.  (See, e.g., AR 543, 552); see generally Hon. Alan Eskenazi, California Civil Practice Workers' Compensation, § 8:24 (2018) ("An agreed medical evaluator is a physician . . . who, by mutual agreement of the parties, prepares a report to resolve a disputed medical issue.") (citing Cal. Lab. Code § 4062.2(b)).

Similarly, Dr. Leoni's records also reflect that plaintiff had one or more medically determinable impairments prior to the date last insured which would have more than a minimal effect on plaintiff's ability to work.  Specifically, as noted above, in June 7, 2004 – before the date last insured – Dr. Leoni diagnosed plaintiff with fibromyalgia based, in part, on findings from the doctor's own physical examination of plaintiff (i.e., multiple positive fibromyalgia "tender points"), as well as Dr. Silver's opinion from July 29, 2003 (slightly over 10 months earlier) that plaintiff "had clear and definitive symptoms of fibromyalgia") and other medical evidence that plaintiff had experienced "widespread muscle pain."  (AR 1254).  Defendant contends the ALJ properly rejected Dr. Leoni's opinions regarding fibromyalgia because, as the ALJ noted, Dr. Leoni was "an internist and pain management specialist" and "not a rheumatologist."  (Defendant's Motion at 4) (citing AR 25, 693-708).  Fibromyalgia, however, may

14

be established as a medically determinable impairment with evidence from any "licensed physician" along with "longitudinal records reflecting ongoing medical evaluation and treatment" for fibromyalgia. SSR 12-2p, 2012 WL 3104869, at *2-*3. Moreover, Dr. Leoni's fibromyalgia diagnosis was not deficient, as defendant suggests (Defendant's Motion at 4), even if it relied, in part, on "statements from prior workers['] compensation evaluators." Quite the contrary, to establish fibromyalgia as a medically determinable impairment, the record must affirmatively show that the physician who made the diagnosis had, in fact, "reviewed the [claimant's] medical history" in addition to conducting an independent physical exam. SSR 12-2p, 2012 WL 3104869, at *2, *3 ("When a person alleges [fibromyalgia], longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of the impairment.").

The ALJ summarized Dr. Leoni's treatment records, in part, as follows:

> The [plaintiff] presented to [Dr. Leoni] in June 2004 who recorded ongoing complaints of abdominal pain, headaches, neck and low back pain, and numbness to left arm, hand, elbow and foot. This examiner reviewed the other worker's compensation doctor reports. Based on the findings, Dr. Leoni provided worker's compensation forms indicating claimant should remain off work with assessments of fibromyalgia, IBS, GERD, obesity, PTSD, depression, history of de Quervain's and status post carpal tunnel and de Quervain's releases (Exhibit 2F). . . . The assessments reflect regurgitations from prior worker's compensation evaluator summaries, which [sic] based primarily on subjective complaints.

(AR 25) (citing AR 692-708). The only exhibit the ALJ appears to cite in support of her implicit rejection of Dr. Leoni's above referenced "assessments" (*i.e.*, Exhibit 2F), however, actually contains "Primary Treating Physician's Progress

Report[s]" from Dr. Leoni apparently for treatment plaintiff received from 2009 and later (*i.e.*, several years *after* plaintiff's date last insured), not from 2004 (as the ALJ's decision appears to suggest).  (AR 693-708).  Moreover, the referenced treatment records actually suggest that Dr. Leoni had diagnosed plaintiff based, in part, on "objective findings" apparently stemming from a contemporaneous physical examination of plaintiff  (AR 693, 697, 699, 702, 704, 706-07), and do not "indicat[e]" that plaintiff "should remain off work" at all, but instead reflect that Dr. Leoni had either deferred to the "AME" regarding plaintiff's work status (AR 696, 700, 703, 705, 708) or did not address plaintiff's work status at all (AR 694, 698).  The ALJ's incomplete and incorrect characterization of the medical evidence calls into question the validity of both the ALJ's evaluation of Dr. Leoni's opinions and the ALJ's decision as a whole.  See Regennitter v. Commissioner of Social Security Administration, 166 F.3d 1294, 1297 (9th Cir. 1999) (A "specific finding" that consists of an "inaccurate characterization of the evidence" cannot support ALJ's decision); Lesko v. Shalala, 1995 WL 263995, *7 (E.D.N.Y. Jan. 5, 1995) ("inaccurate characterizations of the Plaintiff's medical record" found to constitute reversible error); see also Reddick, 157 F.3d at 722-23 (error for ALJ to paraphrase medical evidence in manner that is "not entirely accurate regarding the content or tone of the record").

To the extent the ALJ found that the medical evidence from plaintiff's workers' compensation case was ambiguous with respect to any potential medically determinable impairment(s) prior to the date last insured (see, e.g., AR 27 [ALJ noting "no *clear* evidence" of "identifiable medical impairments that would last more than 12 months prior to the date last insured"]) (emphasis added) or otherwise inadequate for reaching a decision in plaintiff's current Social Security case, the ALJ had a duty to attempt to develop the record further before denying plaintiff's DIB claim at step two.  See, e.g., 20 C.F.R. §§ 404.1512(e), 416.912(e) (Commissioner "will seek additional evidence or clarification from

[claimant's] medical source when the report from [claimant's] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all of the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."); 20 C.F.R. §§ 404.1520b(b), 416.920b(b) (Commissioner must attempt to resolve inconsistencies and make "efforts to obtain additional evidence" when record evidence inadequate for determining disability); see also Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (Although plaintiff bears the burden of proving disability, the ALJ has an affirmative duty to assist the claimant in developing the record "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.") (citation omitted); SSR 12-2p, 2012 WL 3104869, at *4 (when the record contains insufficient evidence to determine whether claimant has medically determinable impairment of fibromyalgia, ALJ must first "try to resolve the insufficiency" (e.g., re-contact doctors, request missing records, etc.) before making a decision based on the existing evidence in the record); see generally, id. at *3 ("In cases involving [fibromyalgia], as in any case, [Commissioner] will make every reasonable effort to obtain all available, relevant evidence to ensure appropriate and thorough evaluation."); cf. Social Security Program Operations Manual ("POMS")[3] § DI 24505.030 (D), (F) (where record contains evidence of "potential impairment" – e.g., reference to symptom, limitation, etc. for which "there is insufficient documentation in file to determine relevance to the disability determination" – further development of evidence necessary, in part, whenever record reflects that "treatment (such as a procedure, a

[3]See Kennedy v. Colvin, 738 F.3d 1172, 1177 (9th Cir. 2013) (Social Security guidelines in POMS "entitled to respect . . . to the extent [POMS] provides a persuasive interpretation of an ambiguous regulation" but POMS "does not impose judicially enforceable duties on either this court or the ALJ") (citations and internal quotation marks omitted); see also Hermes v. Secretary of Health and Human Services, 926 F.2d 789, 791 n.1 (9th Cir.) (POMS considered "persuasive" even though "does not have the force and effect of law"), cert. denied, 502 U.S. 817 (1991).

therapy, or a medication) for a condition was recommended or received" or "evidence or contact with a medical source suggests that the potential impairment is a medically determinable impairment").

Third, the ALJ relied on the opinions of Dr. Henry S. Urbaniak, Jr., a board certified orthopedic surgeon, who testified as an impartial medical expert at the administrative hearing. (AR 26, 48-56, 1481-83). The ALJ summarized Dr. Urbaniak's testimony, in full, as follows:

> The impartial medical expert, Henry Urbaniak, M.D., testified regarding the period prior to the date last insured, the record shows she presented with complaints of back and neck pain, and has a history of bilateral carpal tunnel syndrome repaired in 1999. He testified the record showed she received epidural injection in 1999 and 2000, but since the alleged onset date and through the date last insured, the expert found no evidence of medically determinable impairments.

(AR 26). While it is undisputed that Dr. Urbaniak did find that plaintiff had "identifiable medical impairments," the medical expert's testimony regarding any specific time period(s) during which such impairments actually existed (as opposed to when plaintiff's impairments may have become severe enough to meet or equal a listed impairment) was, at best, ambiguous. (AR 48-50). Moreover, the hearing transcript does not reasonably reflect that the medical expert found the record as a whole devoid of evidence of any medically determinable impairment prior to the date last insured, as the ALJ suggests (AR 26), but instead suggests that the expert had simply failed to *locate* any such evidence, either because he had considered the wrong exhibits (AR 50-52), had relied on notes he had taken during an initial review of the medical evidence (rather than the actual treatment records at issue) which notes either were incomplete and/or did not pertain to medical treatment any earlier than 2014 (AR 51-53), had been unable to access

18

pertinent medical evidence on his computer during the hearing (AR 51-55), flatly declined to address a particular impairment because it fell outside his field of expertise (fibromyalgia) (AR 55), and/or was simply confused by the evidence and/or the ALJ's questions (AR 48-53). Defendant suggests there may be some basis for finding Dr. Urbaniak's testimony more reliable than the hearing transcript reflects. (Defendant's Motion at 3-4). Since the ALJ did not do so in the decision, however, this Court may not affirm the ALJ's non-disability determination on the additional grounds the defendant proffers. See Trevizo, 871 F.3d at 675 (citations omitted).

Finally, the Court cannot confidently conclude that the ALJ's erroneous denial of plaintiff's claim for disability insurance benefits at step two, based on failure properly to consider significant, probative medical opinion evidence, was inconsequential to the ultimate nondisability determination. Cf., e.g., Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (failure to address particular impairment at step two harmless if ALJ fully evaluates claimant's medical condition in later steps of sequential evaluation process); see, e.g., Waters v. Astrue, 495 F. Supp. 2d 512, 516 (D. Md. 2007) (ALJ's failure at step two to consider evidence in record of "other possibly severe impairment(s)" warranted remand as such errors "inevitably infect the analysis at the subsequent steps including steps four and five") (citing Brown v. Barnhart, 182 Fed.Appx. 771, 774 (10th Cir. 2006) ("ALJ's failure to properly consider fibromyalgia at step two impaired analysis at subsequent steps")).

///
///
///
///
///
///

19

## V. CONCLUSION[4]

For the foregoing reasons, the decision of the Commissioner of Social Security is REVERSED in part, and this matter is REMANDED for further administrative action consistent with this Opinion.[5]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  February 6, 2019.

/s/
_____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[4]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

[5]When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted); Treichler, 775 F.3d at 1099 (noting such "ordinary remand rule" applies in Social Security cases) (citations omitted).